UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| CESAR URIBE,<br><br>            Plaintiff,<br>v.<br><br>CORRECTIONAL OFFICER J.<br>McKESSON, CORRECTIONAL OFFICER<br>MARTINEZ, CORRECTIONAL OFFICER<br>ZARAGOSA, CORRECTIONAL OFFICER<br>TUZON,<br><br>            Defendants. | Case No. 1:08-cv-01285 DMS (NLS)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**<br><br>[Doc. No. 63] |

## **BACKGROUND**

Plaintiff Cesar Uribe filed this motion for sanctions for spoliation of evidence against defendants McKesson, Martinez, Tuzon and Zaragosa ("Defendants") for failing to comply with this Court's order to produce the confiscated property/contraband receipts written by McKesson on February 22, 2007 and the February 2007 housing unit cell/locker search log book. He seeks relief in the form of an adverse inference instruction to restore Plaintiff to a position he would have been in had the documents not been destroyed. Defendants oppose, asserting they did not destroy the cell search receipts or log book, and did not influence their destruction under the California Department of Corrections and Rehabilitation ("CDCR") document retention policy.

The Court has considered both parties' arguments, and for the following reasons, **DENIES** the motion for sanctions.

1. **Plaintiff's Complaint.**

Plaintiff sues for violations of his: (1) federal constitutional right to be free from retaliation when engaged in a protected action, and (2) state tort right for personal injury. Compl. ¶¶ 25-26. He asserts these relevant facts in the complaint.

On February 22, 2007, while housed at California Substance Abuse Treatment Facility and State Prison ("SATF"), Plaintiff attempted to mail out his legal documents. Compl. ¶ 9. Following correctional officers McKesson's, Martinez's and Zaragosa's instructions, Plaintiff arrived at the floor office after the evening meal with his legal documents. Compl. ¶ 9. Upon arriving, McKesson, Martinez and Zaragosa told Plaintiff he should have delivered the documents before the evening meal, cursed at Plaintiff and refused to mail out Plaintiff's legal documents. Compl. ¶ 12. Martinez, following McKesson's orders, slammed the door and smashed Plaintiff's foot. Compl. ¶ 14. Plaintiff left the floor office to try and speak with the Sergeant, but instead, was stopped by correctional officer Tuzon, who ordered Plaintiff back to his cell. Compl. ¶¶ 15, 16. Soon after, Plaintiff was brought back to the floor office after again requesting that his legal documents be mailed out. Compl. ¶ 17. McKesson, Martinez and Zaragosa agreed to process Plaintiff's legal mail. Compl. ¶ 18. They then followed Plaintiff back to his cell, locked Plaintiff and his cell mate in a shower cage and ransacked Plaintiff's cell. Compl. ¶ 18. Plaintiff's personal belongings were either confiscated or destroyed. Compl. ¶ 21. McKesson and Martinez made separate statements to Plaintiff, implying that the actions taken against Plaintiff were in retaliation for Plaintiff's attempt to mail out his legal documents. Compl. ¶ 19.

Plaintiff filed a CDCR 602 grievance form concerning these events on February 24, 2007. Uribe Decl. Ex. A. He filed the complaint on August 29, 2008.

2. **The Underlying Motion to Compel.**

On October 29, 2009, Plaintiff served on McKesson requests for production of documents. He requested McKesson's February 22, 2007 cell search receipts and the February 2007 cell/locker search log book for the SATF Facility E, Housing Unit #2. McKesson said he did not have possession, custody, or control of these documents. On January 25, 2010, Plaintiff filed a motion to compel further responses from McKesson, which this Court granted. First, the Court overruled McKesson's objections

to the request for the receipts and ordered the production of "all confiscated property/contraband receipts written by McKesson on February 22, 2007 at SATF, Facility E. Housing Unit #2." If McKesson could not produce the receipts, he was to "provide to Plaintiff a declaration detailing the steps he went through to locate those receipts and explain the prison's document retention policy, if applicable." Second, the Court overruled the objections to producing the unit log book, which defense counsel believed had been destroyed, and ordered McKesson to provide a declaration regarding the retention policy and noted that "if that document was in fact not retained, the court must determine whether its disposal occurred before or after defendants were on notice of this lawsuit."

McKesson determined the receipts and log book had been destroyed. He provided a declaration to Plaintiff explaining the applicable document retention policy. Uribe Decl. Ex. D. According to the policy, log books and cell search receipts are retained for one year, and confiscated property receipts are retained for two years. *Id.* While Defendants could not identify a specific record for the date of destruction of these documents, they believe they were destroyed in February 2008 and February 2009, in accordance with the policy. *Id.*

## DISCUSSION

**A.  MOTION FOR SANCTIONS**

   1.  Legal Standards

      a.  *Duty to Preserve Evidence*

Federal courts have recognized a party's duty to preserve evidence when it knows or reasonably should know the evidence is relevant and when prejudice to an opposing party is foreseeable if the evidence is destroyed. *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998)*; see also World Courier v. Barone*, 2007 WL 1119196 at * 1 (N.D. Cal. Apr 16, 2007). Once the duty to preserve attaches, a party must "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation. *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1070 (N.D. Cal. Oct 25, 2006). The Court's authority to sanction a party for spoliation of evidence arises from both its inherent power to impose sanctions in response to litigation misconduct and from Rule 37 under which sanctions are available against a party "who fails to obey an order to provide or permit discovery." *See* Fed.R.Civ.P. 37(b)(2)(c).

b. *Federal Rule of Civil Procedure 37*

Rule 37 provides that where a party fails to comply with a court order, a court may "prohibit[ ] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed.R.Civ.P. 37(b)(2)(A)(ii).  Sanctions for violations of Rule 37 may be imposed for negligent conduct. *See* Fed.R.Civ.P. 37(b); *Fjelstad v. American Honda Motor Co., Inc.*, 762 F.2d 1334, 1343 (9th Cir. 1985); *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).  The lack of bad faith does not immunize a party or its attorney from sanctions, although a finding of good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust and the severity of the sanctions. *See Hyde & Drath*, 24 F.3d at 1171.  Moreover, a party's destruction of evidence qualifies as willful spoliation if the party has "some notice that the documents were potentially relevant to the litigation before they were destroyed." *Leon v. IDX Sys., Corp.* 464 F.3d 951, 959 (9th Cir. 2006), *quoting United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)(other citations omitted.)  Finally, "[b]elated compliance with discovery orders does not preclude the imposition of sanctions." (*Id.*)*, quoting North American Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447,1451 (9th Cir. 1986).

c. *Inherent Authority of the Court*

The inherent power of the Court extends beyond those powers specifically created by statute or rule, and encompasses the power to sanction misconduct by the attorneys or parties before the Court. *See, e.g. Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (holding that federal courts have the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process."). Sanctions pursuant to a court's inherent authority are appropriate upon a finding of "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

Courts may sanction parties responsible for spoliation of evidence in three ways.  First, a court can instruct the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence.[1]  To decide whether to impose an adverse inference sanction based on

---

[1] An adverse inference is an instruction to the trier of fact that "evidence made unavailable by a party was unfavorable to that party." *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D.Cal. 2008). As the Ninth Circuit has explained:

spoliation, several California district courts have adopted the Second Circuit's test requiring that a party seeking such an instruction establish that: "(1) the party having control over the evidence had an obligation to preserve it; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (followed by *Cyntegra, Inc. v. Idexx Laboratories, Inc.*, 2007 WL 5193736, *2+ (C.D. Cal. Sep 21, 2007); *In re Napster*, 462 F.Supp.2d 1060, 1078 (N.D. Cal.2006); *AmeriPride Svs, Inc. v. Valley Indus. Svc., Inc.*, 2006 WL 2308442, at *5, n. 6 (E.D. Cal. Aug. 9, 2006)). The "culpable state of mind" includes negligence. *Residential Funding Corp.*, 306 F.3d at 108, *quoting Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y.1991).

Second, a court can exclude witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence.[2] Finally, a court may dismiss the claim of the party responsible for destroying the evidence."[3]

### 2.   Conduct Alleged to Warrant Sanctions

Plaintiff argues Defendants willfully failed to take adequate steps to preserve documents, allowing key evidence to be destroyed during the course of this litigation. Defendants do not dispute

---

> [t]he adverse inference sanction is based on two rationales, one evidentiary and one not. The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document. . . . The other rationale for the inference has to do with its prophylactic and punitive effects. Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial.

*Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).

[2]The Court's inherent authority to impose sanctions for the wrongful destruction of evidence includes the power to exclude evidence that, given the spoliation, would "unfairly prejudice an opposing party." *Unigard*, 982 F.2d at 368; *see also Glover*, 6 F.3d at 1329; *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. Sep 02, 2008).

[3]Dismissal is only warranted under the Court's inherent authority in extreme or extraordinary circumstances, in response to abusive litigation practices and to insure the orderly administration of justice. *Halaco Eng'g. Co. v. Costle,* 843. F.2d 376, 381 (9th Cir. 1988). Dismissal is only warranted under Rule 37 when less drastic sanctions cannot correct the prejudice from the disobedient conduct.

that the documents have been destroyed.  Defendants, however, assert that their destruction occurred in the regular course of business in accordance with CDCR document retention policy guidelines.  They also assert their supplemental responses submitted pursuant to this Court's March 8, 2010 Order demonstrate they did not engage in willful destruction of evidence as Plaintiff alleges.

Plaintiff argues the filing of the 602 inmate appeal form on February 24, 2007 placed Defendants on notice of his claims and required them to ensure that any pertinent documents were preserved.  He asserts that because the 602 form contained the statement, "all supervisors should take notice that 'correctional officers' are being sued," Defendants were on notice that litigation would be filed, and Defendants then had a duty to retain and preserve relevant legal documents.

The Court finds the 602 form did not provide notice to Defendants regarding the potential relevance of the cell search receipts and log book so as to trigger the duty to preserve the evidence at that time.  The 602 form focused on the interaction between Plaintiff and Defendants regarding the mailing out of his legal mail.  Uribe Decl. Ex. A.  While Plaintiff refers to McKesson throwing around the property in his cell and mentions the potential for a lawsuit, the Court finds that the submission of the 602 form was not sufficient notice to Defendants to trigger the duty to preserve evidence at that time: Because "federal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators," *Bruce v. Ylst*, 351 F.3d 1283, 1290 (2003), the Court will not impose a duty that prison staff must, at the time of filing a 602 form, act outside of the procedures established in the prison's document retention policy to preserve all evidence potentially relevant to all allegations stated in a 602 form, the substance of which may never actually get filed in a lawsuit.  *See Toussaint v. McCarthy (Toussaint IV)*, 801 F.2d 1080, 1086 (9th Cir. 1986) ("[t]he relief ordered by federal courts must be consistent with the policy of minimum intrusion into the affairs of state prison administration").

       3.      <u>Whether Conduct Rises to the Level to Justify Sanctions</u>

Next, the Court considers whether Defendant complied with the March 8, 2010 Order requiring him to provide supplemental responses to Plaintiff.  Defendant McKesson asserts he diligently complied with the Court's order.  Through counsel, McKesson instructed the litigation office staff to research where the requested documents were being retained at SATF.  Uribe Decl. Ex. D, McKesson

1  Supplemental Resp., Ex. A, Villa Decl. ¶2 ("Villa Decl."). After contacting Facility E staff, the
2  litigation office staff told counsel that the log book, and any receipts of cell searches conducted on
3  February 22, 2007, had been destroyed in compliance with the CDCR document retention schedule.
4  Villa Decla. ¶¶3-4. None of the Defendants personally participated in or had knowledge of the
5  documents' destruction under the CDCR retention policy. McKesson Decl. ¶¶2-3; Tuzon Decl. ¶¶2-3,
6  Martinez Decl. ¶¶2-3, Zaragoza Decl. ¶¶2-3. Nor were Defendants aware that these purported
7  documents would be sought by Plaintiff until he requested them on October 18, 2009, after said
8  destruction. As such, Defendants assert this motion is unwarranted and should be denied.

9        Defendants' supplemental responses sufficiently address the Court's concerns regarding the
10 destruction of the cell search receipts and log book. Defendants provided a declaration by F. Villa, the
11 Office Technician at SATF, who explained that Ms. Bravo, the Office Assistant assigned to Facility E,
12 and her office staff searched the Facility E Building 2 archives to locate the February 22, 2007 cell
13 search receipts. According to Ms. Bravo, the search determined that the cell search receipts where
14 property was confiscated would have been destroyed in February 2009 in accordance with the CDCR's
15 two year retention policy. Villa Decl. ¶ 4. The log book and cell search receipts where no property was
16 confiscated would have been destroyed in February 2008 in accordance with the one year retention
17 policy. *Id.*

18       This Court finds that Defendants' conduct did not rise to a level to justify sanctions here.
19 Regarding the log book and ordinary cell search receipts, those were destroyed in February 2008, six
20 months before Plaintiff even filed this lawsuit. Therefore, the obligation to preserve the evidence had
21 not yet arisen. Regarding the cell search receipts that involved confiscated property, those were
22 destroyed according to the CDCR document retention policy in February 2009. The complaint,
23 however, was served by mail on February 24, 2009. *See* Dkt. Nos. 16-18. At best, Defendants would
24 have had notice of the lawsuit on or around Friday, February 27, 2009. This would have not allowed
25 enough time for Defendants to review the complaint and call for a litigation hold on all potentially
26 relevant documents before they were destroyed in February 2009.
27 / / /
28 / / /

**CONCLUSION**

The Court finds that sanctions are not warranted because the duty to preserve the evidence had not yet arisen and the records were not destroyed with a culpable state of mind.   The Court, therefore, **DENIES** Plaintiff's motion for sanctions for spoliation of evidence.

**IT IS SO ORDERED.**

DATED:  October 21, 2010

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court