# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR URIBE, | CASE NO. 1:08-cv-01285-SMS PC |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SANCTIONS AND DISMISSING ACTION, WITH PREJUDICE |
| v. | |
| J. McKESSON, et al., | (ECF No. 153) |
| Defendants. | |

## I. Procedural History

Plaintiff Cesar Uribe ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Following resolution of Defendants' motion for summary judgment, this action is proceeding on the complaint, filed August 29, 2008, against Defendants McKesson, Martinez, and Zaragosa for retaliation in violation of the First Amendment. On June 1, 2011, Defendants filed a motion for an order to show cause why sanctions should not be imposed and request for an order to show cause hearing. Defendants motion alleged that Plaintiff had filed a false declaration of Inmate Carlos Quiroz in support of his motion for summary judgment. Plaintiff filed an opposition to the motion on June 17, 2011, and a declaration in support on June 22, 2011.

On August 4, 2011, the Court granted Defendants motion for an order to show cause hearing. Plaintiff filed a response to the order to show cause on August 25, 2011. A hearing on the order to show cause was held on August 30, 2011, to allow Plaintiff the opportunity to be heard. During the hearing, the Court heard testimony from Inmate Carlos Quiroz and Plaintiff. The Court issues the

instant order finding that terminating sanctions should be imposed upon Plaintiff for filing a false declaration in support of his motion for summary judgment.

## II.     Legal Standard

### A.     Sanctions

Federal courts have broad powers to impose sanctions against parties or counsel for improper conduct in litigation. The Court derives the power to impose sanctions on parties or their counsel from three primary sources of authority, "(1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001).

#### 1.     Rule 11

Rule 11(b) of the Federal Rules of Civil Procedure provides that "[b]y presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;. . . [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. . . ." Rule 11 imposes an objective standard of reasonableness, which applies to pro se litigants. Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 892 F.2d 802, 811 (9th Cir. 1989).

Rule 11(c) provides for the imposition of appropriate sanctions for a violation of Rule 11(b) on any attorney, law firm or party that has violated the rule or is responsible for the violation committed. Any sanction imposed must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. Fed. R. Civ. P. 11(c)(4). Whether to impose sanctions is determined by the reasonableness of the inquiry into the law and facts. G.C. & K.B. Investments v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003). "An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction." Fed. R. Civ. P.

11(c)(6).

### 2. Inherent Power

The Court has inherent power to sanction parties or their attorneys for improper conduct. Chambers v. Nasco, Inc., 501 U.S. 32, 43-46 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980); Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001). This includes the "inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." Anheuser-Busch, Inc. V. Natural Beverage Distrib., 69 F.3d 337, 348 (9th Cir. 1995) (quoting Wyle v. R. J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983)); see Combs v. Rockwell Intern. Corp., 927 F.2d 486, 488 (9th Cir. 1991) ("Dismissal is an appropriate sanction for falsifying deposition"). Because dismissal is such a harsh penalty, it should only be used in extreme circumstances. Wyle, 709 F.3d at 589. "It is well settled that dismissal is warranted where . . . a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings. . . ." Anheuser-Busch, Inc., 69 F.3d at 348.

### 3. Dismissal as Sanction

In determining whether to dismiss an action for failure to comply with a pretrial order, the Court must weigh "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (internal quotations and citations omitted). These factors guide a court in deciding what to do and are not conditions that must be met in order for a court to take action. In re PPA, 460 F.3d at 1226 (citation omitted).

### III. Discussion

#### A. Hearing Testimony

At issue here is a three page declaration which Plaintiff submitted as an exhibit in support of his opposition to Defendants' motion for summary judgment. The declaration contains purported statements of the declarant, and the third page, bearing Carlos Eduardo Quiroz' signature, is dated March 15, 2010. (Declaration of Carlos Quiroz, ECF No. 82.)

3

1    At the hearing Plaintiff testified that, following the incidents that are alleged in his complaint, he was approached by Inmate Quiroz who told him what he had observed and volunteered to testify on Plaintiff's behalf. Subsequently Plaintiff was placed in administrative segregation and he did not obtain a declaration from Quiroz. Plaintiff claims that he had a verbal proxy from Quiroz authorizing Plaintiff to sign a declaration on his behalf. After Defendants' filed their motion for summary judgment, Plaintiff prepared the declaration for Quiroz, signed Quiroz' name and submitted the declaration to the Court. Plaintiff then contacted Quiroz by letter informing him that Plaintiff had submitted the declaration. Plaintiff and Quiroz exchanged letters, and Plaintiff alleges that Quiroz was angry because a business deal arranged by Plaintiff had fallen through.

On February 28, 2011, Plaintiff sent a letter to Quiroz apologizing for offending him by signing and submitting the declaration. In his letter Plaintiff stated that after he received the motion for summary judgment he was under pressure to submit his response and decided to submit the declaration for Quiroz. Plaintiff asked Quiroz if he would rather that Plaintiff had lost the summary judgment motion. Additionally, Plaintiff informed Quiroz that their correspondence was likely to be monitored and that including the issue of the declaration in his letter could cause it to be brought to the attention of the Attorney General. Plaintiff told Quiroz to address these types of issues by sending the mail through his sister because it would not be as closely monitored as correspondence between inmates.

Quiroz testified that he observed the events that occurred on February 22, 2007. However, according to Quiroz there were two separate incidents that he witnessed. After the second incident, not at issue in this action, Quiroz told Plaintiff that he had seen what occurred and would testify for Plaintiff. Plaintiff was placed in administrative segregation and Quiroz did not speak to or hear from him for the next three years.

After Quiroz received a letter from Plaintiff in January 2011, informing him that Plaintiff had written the declaration and signed his name to it, Quiroz wrote back stating he was upset because he had not given Plaintiff the authority to sign his name and the declaration was false. After they had exchanged letters ,Plaintiff offered to make monthly payments to pay back money that Quiroz had given to Plaintiff's sister-in-law. Plaintiff sent Quiroz the first payment of thirty dollars in March

4

2011. Plaintiff told Quiroz that he would pay him back the money with any settlement he received from this lawsuit. Quiroz never received any additional monthly payments from Plaintiff.

Quiroz testified that the signature on the declaration was his, however he did not sign the declaration or read it prior to Plaintiff signing it for him. Quiroz never gave Plaintiff permission to sign the declaration for him. The declaration is signed with the name Carlos Eduardo Quiroz. Quiroz does not use his middle name in his prison litigation. Plaintiff assisted Quiroz with some litigation outside of his prison litigation, and he assumes that Plaintiff had some of these documents and traced his signature onto the declaration. Additionally, the factual allegations in paragraphs seven through ten are false.

### B.   **Plaintiff's Conduct in Submitting Declaration**

For the reasons set forth in the following paragraphs, the Court finds that Plaintiff's conduct in preparing the declaration justifies the imposition of sanctions.

Although Plaintiff claims that he had a verbal proxy to sign the declaration on behalf of Quiroz, during the hearing Plaintiff gave conflicting testimony on whether Quiroz told him that he could sign the declaration on his behalf. Originally, Plaintiff testified that he told an inmate porter to let Quiroz know that Plaintiff would sign the document for him if Quiroz didn't sign it before he was transferred. Plaintiff never heard back from Quiroz or the porter. Plaintiff later testified that he had received verbal permission from Quiroz to sign the declaration, but he had previously testified that he had not seen or heard from Quiroz after the incident in question. In the letter Plaintiff sent to Quiroz he acknowledged that he did not have permission to sign the declaration, and Plaintiff had been attempting to get in touch with Quiroz but had been unable to. Because he needed to oppose the summary judgment, he made a "mistake" and submitted the declaration.

Plaintiff states that Quiroz told him that he had observed the incidents included in the declaration. However, Quiroz testified that, while he did observe the incident, it did not occur as stated in the declaration. Plaintiff was antagonizing the defendants in an attempt to get placed back in administrative segregation. Quiroz was adamant during the hearing that he would testify to the second incident because he observed it, but would not testify regarding the false information included in the declaration. When asked if Plaintiff had his permission to sign the declaration,

Quiroz said that he had not given his permission because Plaintiff could have said anything in the declaration. Quiroz stated that he never saw or read the declaration prior to Plaintiff forging his name to the document, then Plaintiff attempted to "teach" him what to say to help Plaintiff win his lawsuit.

Plaintiff argues that Quiroz is trying to force this action to be dismissed in retaliation for his sister-in-law keeping the money paid to her without providing the legal services bargained for. The Court notes that Plaintiff agreed to pay the money back and offered to pay Plaintiff out of any proceeds he obtained in this suit. Plaintiff even started making monthly payments to Quiroz. However, Quiroz has continually been asserting that he is upset because Plaintiff forged his signature on a false declaration. Since Plaintiff withdrew his request for Quiroz to be transported as a witness, Quiroz could simply have accepted the money and not testified.

Finally, Plaintiff admits that he wrote the declaration, signed Quiroz' name, and submitted it to the Court in support of his motion for summary judgment. The Court notes that Plaintiff traced Quiroz' signature, apparently from another legal document that he assisted Quiroz in preparing. The Court finds that Plaintiff intentionally and in bad faith made false representations in filing Quiroz' declaration in support of his motion for summary judgment. Plaintiff's conduct in filing a false declaration violated Rule 11 and also "willfully deceived the court" and was "conduct utterly inconsistent with the orderly administration of justice." Anheuser-Busch, Inc. V. Natural Beverage Distrib., 69 F.3d 337, 348 (9th Cir. 1995). Such conduct justifies the issuance of sanctions "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

### C. Sanctions

Having found that Plaintiff submitted a false declaration in bad faith, the Court turns to the propriety of dismissal as a sanction.

Plaintiff argues that as a pro se litigant he should not be held to the same standard as an attorney. The Court notes that Plaintiff is a seasoned litigant, not only litigating his own cases, but

assisting other inmates with legal issues.[1] Initially, Rule 11 explicitly applies to pro se litigants and the express goal of Rule 11 is deterrence. Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994). Pro se litigants must follow the same procedural rules that govern other litigants. King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, the fact that Plaintiff is proceeding pro se does not insulate him from the imposition of sanctions for his misconduct in prosecuting this action. While a litigant proceeding pro se is not held to precisely the same standards as an attorney, filing a false declaration would violate the standard for any litigant. Willful and bad faith conduct will not be excused because Plaintiff is representing himself in this action.

This case has been pending since 2008, and the delay in these proceedings is due to Plaintiff's conduct. The expeditious resolution of litigation and the Court's need to manage its docket weigh in favor of dismissal. See In re PPA, 460 F.3d at 1227. This action has been pending for three years. Even if the Court found Plaintiff's version credible, Plaintiff had ample opportunity to conduct discovery and contact Quiroz to obtain a declaration prior to submitting a false declaration. See id. The Court has an enormous caseload, and when litigants file fraudulent documents, the Court's ability to manage its docket and guide cases toward resolution is significantly compromised. See id.

As for the risk of prejudice to Defendants, there is no identifiable prejudice in this instance. See id. at 1227-28.

Regarding the fourth factor, while public policy favors disposition on the merits and therefore weighs against dismissal, it is Plaintiff's own misconduct which is at issue here and which has stalled the case. See id. at 1228.

Finally, there are no alternative sanctions which are satisfactory. Monetary sanctions are not available given that Plaintiff is incarcerated and proceeding in forma pauperis, making the imposition of such sanctions of no consequence. The Court could simply disregard the false declaration; however, allowing Plaintiff to continue this action would not deter repetition of such conduct or

---

[1] The Court takes judicial notice of court records and the cases filed by Plaintiff. Uribe v. Adams, No. 2:02-cv-09449-GHK-CW (C.D.Cal. Dec. 12, 2002); Uribe v. Adams, No. 06-55252 (9 th Cir. Feb. 23, 2006);Uribe v. McGuinness No. 1:07-cv-01064-GMS (E.D.Cal. July 25, 2007); Uribe v. Bhatt, No. 10-17845 (9 th Cir. Apr. 8, 2011).

7

comparable conduct. Such a course would simply place Plaintiff back in the same position he was in, without the false declaration. Discovery is closed and the deadline for filing pretrial motions has passed, rendering unavailable the Court's ability to impose any limitations on Plaintiff in those areas as a sanction. In sum, the Court finds dismissal is the only sanction that adequately redresses the severity of Plaintiff's misrepresentations to this Court.

### IV. Conclusion and Order

Based on the foregoing, the Court finds that Plaintiff Cesar Uribe has intentionally misled the Court and this action is DISMISSED, with prejudice, as a sanction for Plaintiff's filing a false declaration in support of his opposition to Defendants' motion for summary judgment. All pending motions are terminated.

IT IS SO ORDERED.

**Dated:   September 6, 2011**              /s/ Sandra M. Snyder
                                          UNITED STATES MAGISTRATE JUDGE